8896

McKEOWN v. SOUTHERN RAILWAY CO.

(82 S. E. 437.)

CARRIER AND PASSENGER.   CHARGE.   TICKETS.   EJECTION OF PASSENGER.   WILFULNESS   DAMAGES.

1. Where after changing the advertising name of train, No. 37, from "Washington and Southwestern Limited," to "New York, Atlanta and New Orleans Limited," a carrier sold a ticket for passage over the route on which this train ran and between points at which this train stopped, stamped "Not good on Washington and Southwestern Limited," the limitation did not then apply to train No. 37, and the purchaser was entitled to transportation on that train.

2. Where a carrier having means and opportunity to investigate, refused to investigate a reasonable explanation given by a passenger in regard to his right to ride upon a ticket in his possession, or to accept a ticket, and ejected the passenger from the train, assigning as the only reason, that it might not have time to ascertain the truth until too late, the question as to the reasonableness of the explanation, and as to whether or not the ejection was wilful was properly submitted to the jury.

3. A passenger presenting a good ticket is under no obligation when threatened by the carrier with ejection from the train to pay an addition fare, or make a deposit of cash on account thereof, in order to prevent the anticipated wrong or minimize damages to arise therefrom.

4. A conductor being charged with the duty to heed the reasonable explanation given by a passenger of his right to ride upon a ticket in his possession, and to investigate their truth, refusing to attempt an investigation, the carrier, his employer, is charged with the information which such investigation might have furnished.

5. In action an action by a passenger against a carrier for a wrongful ejection from a train a charge, "that this action is predicated not on the negligence of the selling agent, but on the negligence, wilfulness, wantonness, recklessness and maliciousness of the ejecting agent. If the agent at Chester represented to the plaintiff that that ticket was good on train No. 37 and the plaintiff paid his money on that representation believing it, he had the right to ride on No. 37. It is the duty of the conductor in charge of the defendant company's train to heed the reasonable explanation of the passenger, where the passenger is found to be in possession of an irregular ticket, and if the conductor acts without heeding the reasonable explanation of the passenger, he runs the risk of the passenger being right, and if the passenger is right the conductor subjects the company to a cause of action for damages; and if the conductor recklessly, wilfully, or wantonly refuses to heed them, he subjects his company to punitive damages if the passenger be injured through the wrongful ejection; and if the passenger bought the ticket on the representation of defendant's selling agent that it was good for a particular train, and the passenger honestly believed that, paid his money for it on that belief and took that train, if he was ejected, he was wrongfully ejected." *Held,* entirely upon the law, applicable to the hypothetical statement of facts, and sustained.

6. Want of wilfulness of carrier's ticket agent in issuing a ticket which misled its conductor, cannot negative the wilfulness of the conductor in ejecting the passenger without investigation of his reasonable explanation.

Before PRINCE, J., Chester, Fall term, 1913. Affirmed.

Action by James S. McKeown against Southern Railway Company. From judgment for plaintiff, defendant appeals.

*Messrs. McDonald & McDonald,* for appellant, submit: *No proof of bad motive accompanying ejection, verdict should have been directed for defendant as to punitive dam-*

*ages:* 2 Suth. Dam. (3d ed.) 1085, 1092, 1095; 69 S. C. 434, 444; 2 Rich. L. 283; 3 S. C. 580; 28 S. C. 265; 35 S. C. 475, 488, 489, *note;* 28 Am. St. Rep. 875, 878, 879, 881; 60 S. C. 67; 62 S. C. 270; 64 S. C. 12. *North Carolina law in such cases:* 107 N. C. 327; 12 S. E. 138; 140 N. C. 196; 52 S. E. 731. *See, also:* 53 N. E. 84; 3 Ga. App. 142; 59 S. E. 323. *Duty to minimize damages:* 75 S. C. 355; 69 S. C. 539; 90 S. C. 507, 510, 512, 513.

*Mr. R. L. Douglas,* for respondent, cites: *Refusal of conductor to heed passenger's explanations:* 64 S. C. 514; 69 S. C. 327; 88 S. C. 7; *Ib.* 427; 94 S. C. 95. *Passenger's right to rely on information given by ticket agent:* 87 S. C. 184; 88 S. C. 421, 426. *Effect of limitation stamped on ticket:* 65 S. C. 523. *Wilfulness, a question for jury:* 69 S. C. 160; 65 S. C. 122, 128; 64 S. C. 242, 244; 90 S. C. 507. *As to minimizing damages:* 92 Am. Dec. 276, 280; 34 N. E. 742, 744.

July 17, 1914.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The plaintiff, who lives in Chester county, had an engagement to attend a convention that met in Greenville on the 18th of March, 1913. From his home he called over the phone the Southern depot at Chester and asked for information as to routes and rates from Chester to Greenville, stating that he wanted to reach Greenville about midday of 18th. There was a choice of routes and rates offered. The agent advised the longest route and the highest rate by Charlotte. There were special excursion rates to the convention. The plaintiff asked the agent if he knew of any one else who was going, and the agent replied that Mr. Douglas was going, and the plaintiff told the agent he would communicate with Mr. Douglas and get him to get the ticket for him. He did so. Mr. Douglas bought two excursion

tickets, one for himself and one for the plaintiff.  Mr. Douglas was informed that the route by Charlotte would require the payment of Pullman fare extra.  The Pullman tickets were purchased in Charlotte.  The train these gentlemen took at Charlotte made only three stops between Charlotte and Greenville, to wit, Gastonia, Blacksburg and Spartanburg.  Between Charlotte and Gastonia the ticket collector of the defendant and the Pullman conductor demanded the tickets.  The Pullman conductor took his ticket, but the ticket collector of the defendant refused to honor the tickets of the plaintiff and Mr. Douglas, and demanded cash fare.  Both of these gentlemen refused to pay the fare.  They explained fully the circumstances under which the tickets were bought.  That they had contracted for that train, and had paid all that was demanded of them, and that they were assured that they had complied with all requirements and were entitled to ride on it upon their tickets.  They requested the conductor, to whom the matter was referred by the ticket collector, to wire the Chester agent and ascertain from him the facts.  The conductor declined to wire as it might take until the next day to get an answer.  The plaintiff and Mr. Douglas were told that if they did not pay the cash fare by the time they reached Blacksburg, they would be ejected.  They did not pay and were ejected.  This action was brought for both actual and punitive damages for the ejectment at Blacksburg.

The defendant did not deny the circumstances surrounding the purchase of the ticket and claimed that the delict, if any, was in the issuance of the ticket at Chester and not the ejectment at Blacksburg.  In other words, that the agent at Chester, by mere inadvertance, had delivered to the plaintiff and Mr. Douglas tickets that were old, out of date, and tickets that the conductor on this train, which was a "limited train," could not have accepted, and that the conductor acted in perfect good faith and in obedience to rules in refusing to accept the tickets.  (Mr. Douglas has brought a separate

action.) The judgment was for the plaintiff and the defendant appealed.

In order to avoid confusion, it is well to eliminate some questions that are not before this Court. This is not a question of rates. The defendant said in the trial more than once, "it is not a question of not charging enough." It is not a question of through travel. There was no question of local travel. This question was not raised and there were other local passengers. This train was to stop at Greenville. There was some testimony as to some offer by the plaintiff to pay the difference between the ticket and the cash fare, but this is not important here, as defendant protested that "it is not a question of not charging enough."

Two questions may arise:

1. Did the ticket entitle the plaintiff to passage on this train.

2. If the ticket was insufficient, was the defendant bound to heed the explanation of the passenger?

1. Did the ticket entitle the plaintiff to passage on this train?

The trouble with the ticket was that it had printed on it in red letters these words: "Not good on Washington and Southwestern Limited."

The official designation of this train was "No. 37." It seems that the ticket was old and the advertising name had been changed from "Washington and Southwestern Limited" to "New York, Atlanta and New Orleans Limited." The new name is in the folders issued by the defendant and the new name is set up in the answer. The answer set up the "New York, Atlanta and New Orleans Limited as words of similar import." The defendant made a contract to carry the plaintiff from Chester to Greenville and gave the plaintiff a ticket to show that the fare had been paid and the contract made. The ticket had a limitation. The defendant printed and issued the ticket. If it wanted to limit the ticket, it ought to have done so. It

did limit the ticket and the limitation did not apply.    There was nothing on the ticket to show that the ticket was not good on "No. 37" or the "New York, Atlanta and New Orleans Limited."    The contract of transportation being general, with a limitation expressed, the ticket was good and the plaintiff was entitled to be transported unless he came within the limitations, and we have seen that he did not.

The second question, based upon a void ticket, need not be discussed as it does not properly arise.    It can have no effect on this case.

2. The fifth and sixth exceptions complain of error in the refusal of the motion for a nonsuit and a direction of verdict as to punitive damages.    Apart from the fact that the plaintiff was ejected after the presentation of a valid ticket, an explanation was given and it was for the jury to say whether it was reasonable or not. This explanation the conductor refused to accept, or even to investigate, and the only reason given was that he might not have been able to learn the truth until too late.    The duty of the carrier to heed the reasonable explanations of passengers is too plain, and the authorities too recent and too numerous to require citation.

3. The fourth exception complains of error in the refusal of his Honor, Judge Prince, to charge the defendant's fifth request to charge in reference to the duty of the passenger to minimize his damages by paying the cash fare in anticipation of his ejectment and thereby avoid it.

If the action had been for a past wrong, then it was his duty to minimize.    To this point the authorities are clear and full.    No binding authority has been cited that holds that a passenger is required to minimize on anticipated wrong.    For instance, if the wrong complained of had been the mistake of the agent at Chester, then the duty to minimize would have been upon the plaintiff.    Judge Prince held that this action was for the ejectment at Blacksburg and not the past action at Chester, and the rule does not

apply. There is just as much difference between the two as there is between a release for future negligence and as release for past negligence. It may be that a nervous man or even a prudent man will have enough money with him to purchase his tickets and pay his cash fare, too, in case it is demanded, but there is no such requirement and the plaintiff here said he did not have enough for both.

This exception is overruled.

The third exception is much like the fourth, except that his Honor charged the jury that the conductor was charged with the knowledge of what happened at Chester. The duty of the conductor was to investigate. *Teddars v. Southern Ry.*, 97 S. C. 153, 81 S. E. 474. The conductor had the opportunity to, at least, try at Gastonia before they reached Blacksburg and he was charged with the information that an investigation might have furnished.

5. The second exception raises this same question of imputed knowledge and is covered by the comment on exception three.

6. The first exception can not be condensed, and will have to be copied.

"1. Because his Honor erred in charging the jury as follows:

'Now, I charge you in this case that this action is predicated not on the negligence of the selling agent, but on the negligence, wilfulness, wantonness, recklessness and maliciousness of the ejecting agent. I charge you that if the agent at Chester represented to the plaintiff that ticket was good on train No. 37 on the main line, and the plaintiff paid his money on that representation believing it, he had the right to ride on No. 37, and I charge you, further, that it is the duty of the conductor in charge of one of the defendant company's trains to heed the reasonable explanations of a passenger where the passenger is found to be in possession of an irregular ticket, and if he

acts without heeding the reasonable explanation of a passenger he runs the risk of the passenger's being right, and if the passenger is right he subjects this company to damages, to a cause of action for damages; and if he recklessly, wilfully, or wantonly refuses to heed them, he subjects his company to punitive damages if the passenger be injured through the wrongful ejection; and I charge you if the passenger bought the ticket on the representation of that agent that it was good for a particular train, and the passenger honestly believed that, paid his money for it on that belief and took that train, if he was ejected he was wrongfully ejected.  Now, I am making this plain, because there are some very nice questions of law that the defendant and other companies in like circumstances will have to get the Supreme Court to settle.  But you can't settle it.  You have got to take what I say, and I am giving you what I believe the law;' the specific error being (a) that while the action may not have been predicated on the negligence of the selling agent at Chester, yet such negligence was set up in the answer of the defendant in order to negative wilfulness, wantonness, recklessness and maliciousness on the part of the ejecting agent.  (b) That under such charge his Honor practically instructed the jury that they must render a verdict for the plaintiff, and thereby charged upon the facts in violation of the Constitution of this State.  (c) That by such charge the duty of the plaintiff to minimize the damages, ensuing, or about to ensue, from the negligence of the selling agent at Chester, after his attention had been called to such negligence, was entirely excluded from the consideration of the jury."

a. It is difficult to see how the want of wilfulness at Chester can negative wilfulness at Blacksburg.  The action was for the ejectment at Blacksburg.  This position can not be sustained.

b. That charge was entirely on the law, and the objection can not be sustained.

c. This position can not be sustained for the reason stated above.

The judgment is affirmed.

Mr. Chief Justice Gary and Mr. Justice Hydrick concur in the result.