## 8900

### WILLIAMS *ET AL.* v. ATLANTIC COAST LINE R. R. CO.

(83 S. E. 604.)

CARRIER AND PASSENGER. CHARGE. LOST TICKET. EVIDENCE. DIRECTION OF VERDICT.

1. Reading to the jury an extract from an opinion of the Court in another case, as an illustrated statement of law, is not objectionable as a charge upon the facts, where it is accompanied by the statement that the case under consideration stands upon its own circumstances, and not on those in the case read.

2. A charge as to the law protecting a carrier against persons attempting to evade payment of fare, not error, in case where the carrier set up failure to exhibit ticket or pay fare as defense in action growing out of ejection of passenger.

3. A charge that punitive damages may be awarded for any intentional ejection of a person from a passenger train, no matter how slight the force used, if such ejection was unlawful, and such act is not characterized by inadvertence," approved as not upon the facts.

4. CARRIERS—EJECTMENT OF PASSENGER— SUFFICIENCY OF EVIDENCE— MISLAID TICKET.—In an action for the wrongful ejection of a passenger who had mislaid her ticket, evidence *held* sufficient to take to the jury the question whether it was the exercise of the highest degree of care to eject the passenger so soon after leaving the place of departure.

5. CARRIERS—EJECTMENT OF PASSENGER—EXEMPLARY DAMAGES.—A carrier which acted with unreasonable haste in ejecting a passenger who had mislaid her ticket, which was found by the car porter shortly thereafter under the seat, is guilty of a plain delict, for which punitive damages may be recovered.

. 6. CARRIERS—EJECTMENT OF PASSENGERS—INSTRUCTIONS.—In an action
    by a passenger for damages caused by her wrongful ejection because
    she had temporarily mislaid her ticket, the charge of the Court *held*
    to be free from error.

7. The admission of testimony offered by plaintiff as to declarations of
    defendant's porter, showing undisputed facts, also testified to by
    defendant's conductor, when called by it as a witness, is not preju-
    dicial error.

Before SEASE, J., Sumter, November, 1913.    Affirmed.

Action by Susan A. Williams and E. W. Williams, her
husband, against Atlantic Coast Line Railroad Company.
From judgment for plaintiff, defendant appeals.

The charge of the Circuit Judge was as follows:

Mr. Foreman and Gentlemen of the Jury: You are the
judges of the credibility of the witnesses, and the force and
effect to be given to their testimony.   You have heard all
the testimony, which has not been very long, and you have
heard the arguments, which have covered the status of the
case from both standpoints—from the standpoint of the
plaintiff and from the standpoint of the defendant.   After
the testimony passes the ruling of the Court as to whether
it is competent or incompetent, it is for your consideration,
and you must consider it one way or the other.

I charge you that a plaintiff who asks a recovery must
satisfy the jury by the preponderance of the evidence of
her right to recover, as alleged in her complaint.   The
defendant—the plaintiff—comes into Court and alleges by
her somewhat lengthy complaint that she—all of which may
be summed up in a few words, that she was unlawfully
ejected from a railroad train at a certain time and place,
having paid her fare and purchased a ticket.   That is
alleged in the complaint, and that, therefore, she is entitled
to recover not only actual, but punitive damages.   I think

FOOTNOTE.—As to duty of conductor to heed explanation by passenger
of failure to present ticket, see *Teddars* v. *So. Ry. Co.*, 97 S. C. 153,
81 S. E. 474, and *McKeown* v. *So. Ry. Co.*, 98 S. C. 338, 82 S. E. 437.

that it is generally conceded that this complaint is a suit for punitive damages. I think that it is generally conceded that this complaint is a suit for punitive damages, that is, by way of punishment; and she alleges that she was ejected from the train at a certain place, and also alleges that the conductor asked the plaintiff for her ticket, and when the plaintiff reached for her hand bag to produce the ticket, to her great astonishment, found that the defendant had negligently permitted the porter or some one to take the hand bag with the ticket in it, without her permission, and that said plaintiff then notified the said conductor of such fact, and the conductor told her she must either get the ticket or pay cash fare into Sumter, and she alleges further she could have found the ticket in a reasonable time, if she had been allowed to do so, and had no money with her, and that she was the wife of the Rev. E. W. Williams, and that if he would carry her to Sumter, she would either find the ticket before reaching Sumter or pay the defendant at Sumter, and the conductor thereupon had his porter to take said plaintiff forcibly from her seat and carry her out of the train and caused her to get off at a place where there were no conveniences for persons traveling, and she alleges that she was much shocked and humiliated by her forcible ejection from said train, and being left alone at the railroad track, made very nervous and so much so that she was sick for several weeks on account of the treatment aforesaid, and had no way to get back to Columbia, etc., and she alleges that on account of the alleged treatment—the wilful and wanton invasion of her rights, she alleges that she has been damaged in the sum of two thousand nine hundred and ninety-nine dollars, and asks for judgment for that amount.

The defendant denies the allegations of the complaint, and sets up as a defense the following allegations: That she was denied the right to ride and travel upon a certain train operated by the defendant because she failed and refused to produce and exhibit any ticket or any other form of transpor-

tation, and failed and refused to pay the legal fare demanded of her, and that the defendant was prohibited by the laws of South Carolina from transporting her as a passenger without the payment of the full legal rate established for such transportation. That if plaintiff had such ticket as alleged in the complaint, this defendant had no knowledge of it, and any 'failure to find and produce said ticket was caused solely by the negligence of the plaintiff; and it alleges as a further defense that she was negligent, and her negligence contributed to her ejectment and subsequent ·difficulties, as a proximate cause thereof, without which the same would not have occurred, and she was negligent as above stated, and alleges further in the answer as a further defense that the damages alleged to have been suffered were caused by her wilful failure and refusal to accede to the reasonable, lawful and proper demands of the defendant's conductor, in that she wilfully failed and refused to produce any ticket or other evidence of her right to transportation, and wilfully failed and refused to pay the lawful fare.

I charge you gentlemen that the defendant, its agents and servants, are required to exercise the highest degree of care in the transportation of its passengers, and also charge you that where contributory negligence is set up, that the defendant who sets up contributory negligence must satisfy the jury of that contributory negligence by the preponderance of the evidence. I charge you also that a person traveling upon a train must exercise due care for her own safety and her own protection; she must exercise that care that is due from a person of ordinary prudence and care.

I charge you gentlemen that it is the duty of the passenger—or rather it is the duty of the defendant, its agents and servants, to observe and take due notice and heed the reasonable explanations of the passengers in regard to their transportation and ticket, and in that connection, I desire to read the language of Justice Hydrick in the case of *Smith* v. *The Railroad,* reported in 88 S. C. 421,

427, 70 S. E. 1057, 34 L. R. A. (N. S.) 708. This, of course, is about another case, but you will catch the principle that I intend to charge. I charge you that this case stands upon its own circumstances, and not on the case of Smith. "The foregoing cases also hold that it is the duty of the conductor under such circumstances to heed the reasonable explanations of the passenger as to his ticket or his right to ride, and our own decisions are to the same effect. The rule, requiring the conductor to heed the reasonable explanation of the passenger, instead of allowing him to demand the payment of fare, on pain of expulsion from the train, works less hardship, inconvenience and expenses on the carrier than the opposite rule on the passenger; for it is generally an easy matter for the conductor to ascertain whether the explanation of the passenger is true or false, because the stations along the railroad are nearly all connected by telephone or telegraph lines, which the agents of the company may use with little trouble, and at little or no expense. It is a serious matter to expel a passenger from a train. It subjects him to humiliation, and it is calculated to wound the feelings of any self-respecting passenger. Therefore the law allows punitive damages for the wrongful expulsion of a passenger, and also for compelling him to pay money under threat of wrongful expulsion. Consequently, the law is that a carrier must be allowed to resort to so harsh and extreme a measure only at the peril of being able to justify it."

Gentlemen, that is a matter of question for you, whether or not the defendant, its agents and servants, acted reasonably under all the circumstances surrounding the situation.

I charge you also that the law seeks to protect the railroad companies from people who try or attempt to beat their way on the railroad. Section 678 of the Criminal Code provides: "Whoever evades or attempts to evade the payment of any toll or fare, lawfully established, for the carrying of passengers by the giving a false

26—99

answer to the collector of the fare, by traveling beyond the point to which fare has been paid, or otherwise attempt to ride without paying said toll or fare or by riding without permission on trains that do not carry passengers, or by concealing themselves upon or about any train, with the intent to evade the payment of lawful toll or fare, shall be guilty of a misdemeanor, and, upon conviction thereof, shall pay a fine of not more than fifty dollars, or be sentenced to imprisonment or labor on the chain gang for not more than thirty days."

I charge you that the conductors or railroad authorities are peace officers, and have the common law powers of constables.

Now, gentlemen, it is a matter entirely for you. You have heard the testimony. You have heard all the circumstances. This is a suit for punitive damages. You are to say whether or not the plaintiff used due care, and if the lack of due care on her part was the proximate cause of her injury and her damage, then she cannot recover; and I charge you that where an act is wilful and wanton, contributory negligence is no defense, and I charge you further, in the language of another case, in 71 S. C. 446, 51 S. E. 261, punitive damages may be awarded for any intentional ejectment of a person from a passenger train, no matter how slight the force used, if such ejection was unlawful, and such act is not characterized by inadvertence."

Now, if you come to the conclusion that the plaintiff has satisfied you by the preponderance of the evidence that her rights as a passenger have been invaded—if she was a passenger—have been invaded in a high-handed, wrongful manner, wanton manner, that she was ejected unlawfully from the train, then she is entitled not only to actual damages, but what is known as punitive damages, by way of punishing the railroad company for any high-handed or wilful conduct in the invasion of her rights as a

passenger.   I charge you that an unlawful ejection is an invasion of a passenger's right, and it would be the duty of the jury, if they conclude that she was unlawfully ejected, to write a verdict for punitive damages; so the form of your verdict will be, "We find for the plaintiff so many dollars," writing it out in words and not in figures, and sign your name and add the word foreman under it.   Take the record, or if you find for the defendant, write, "We find for the defendant," and sign your name and add the word foreman under it.   Take the record.

The following were the exceptions:

I.  His Honor erred, it is respectfully submitted, in admitting over defendant's objection the testimony of the witness, Strother, as to conversation with the porter, such declarations as testified to by the witness not being part of the *res gestae* or in any sense contemporaneous with the transaction out of which the cause of action set up in the complaint arose; the questions, objections, ruling and answers, being as follows:

What did he say to you about the ticket?

Mr. McLemore: We object, on the ground that it is a declaration of an agent long after the transaction in question, and not a part of the *res gestae*.

Court: Not part of the *res gestae*, but any statement of liability or statement concerning a transaction about which the allegations are in the complaint, that is a statement concerning a transaction which the complaint has set forth.   If he can show this was the porter on that train, and that it was within the scope of his duty, it is an exception.   I think it is competent.

Mr. McLemore: Does your Honor mean to hold that a statement of an agent is competent when that statement is made two days after the transaction in question?

Court: Yes, I hold it refers back to that and is part of the duties of the person who is making the statement con-

cerning his duties about a matter it is his duty to perform.

Q. What did the porter tell you about the ticket? A. He told me after they had put down the lady, he went back through the train, the rear end of the train, and found this hand bag near the open end, side of a seat, and said after he picked it up and opened it he knowed that it was the hand bag and that was her ticket that she had lost, and he brings it back and gives it to the conductor, and then the conductor, he takes it and give it to another man after he came further down the road to take back to her * * *

II. His Honor erred, it is respectfully submitted, in overruling defendant's motion for directed verdict, made at the close of all the evidence, upon the following grounds:.

1. That there was no evidence of negligence resulting in the loss of the pocketbook.

2. That there was no evidence of wilfulness resulting in the loss of the pocketbook.

3. That the only inference that could be drawn from the evidence was that the plaintiff's contributory negligence brought about the loss of her pocketbook.

4. That in connection with the motion on each cause of action, upon the facts appearing in evidence, the conductor had no alternative and could only eject the plaintiff.

III. His Honor erred, it is respectfully submitted, in charging the jury as follows:

"I desire to read the language of Justice Hydrick in the case of *Smith* v. *Railroad,* reported in 88 S. C. 421, 427, 70 S. E. 1057, 34 L. R. A. (N. S.) 708. This, of course, is about another case, but you will catch the principle that I intend to charge. Page 427: 'The foregoing cases hold that it is the duty of the conductor under such circumstances'—that is other circumstances. I charge you that this case stands upon its own circumstances, and not on the case of Smith—'the foregoing cases also hold that it is the duty of the conductor under such circumstances to heed the reasonable explanations of the passenger as to his ticket or

his right to ride, and our own decisions are to the same effect. The rule requiring the conductor to heed the reasonable explanation of the passenger, instead of allowing him to demand the payment of fare, on pain of expulsion from the train, works less hardship, inconvenience and expense on the carrier than the opposite rule would on the passenger; for it is generally an easy matter for the conductor to ascertain whether the explanation of the passenger is true or false, because the stations along the railroad are nearly all connected by telephone or telegraph lines, which the agents of the company may use with little trouble, and at little or no expense. It is a serious matter to expel a passenger from a train. It subjects him to humiliation, and it is calculated to wound the feelings of any self-respecting passenger. Therefore, the law allows punitive damages for the wrongful expulsion of a passenger, and also for compelling him to pay money under threat of wrongful expulsion. Consequently, the law is that a carrier must be allowed to resort to so harsh and extreme a measure only at the peril of being able to justify it.' "

"This portion of the charge was erroneous and prejudicial, because (1) as applied to the facts of this case, it was error to state to the jury that it was the duty of the conductor under such circumstances to heed the reasonable explanation of the passenger; (2) as applied to the facts of this case, it was error to state to the jury that the rule requiring the conductor to heed the reasonable explanation of the passenger instead of allowing him to demand the payment of fare on pain of expulsion from the train, would work less hardship, inconvenience and expense on the carrier than the opposite rule would on the passenger. In so charging his Honor further charged on the facts in the following respects: (1) That upon the facts, circumstances, appearing in this case, it was the duty of the conductor to heed the reasonable explanation of the passenger; (2) that the rule requiring the conductor to heed the reasonable explanation

of the passenger, instead of allowing him to demand the
payment of fare, on pain of expulsion from the train, works
less hardship, inconvenience and expense on the carrier than
the opposite rule would on the passenger; (3) that it is gen-
erally an easy matter for the conductor to ascertain whether
the explanation of the passenger is true or false, because the
stations along the railroad are nearly all connected by tele-
phone or telegraph lines, which the agents of the company
may use with little trouble and at little or no expense; (4)
that it is a serious matter to expel a passenger from a train;
(5) that it subjects him to humiliation and is calculated to
wound the feelings of any self-respecting passenger; (6)
that, therefore, the law allows punitive damages for the
wrongful expulsion of a passenger; and (7) that the law is
that a carrier must be allowed to resort to *so harsh and
extreme a measure* only at the peril of being able to justify
it.    It is submitted that the qualification following this por-
tion of the charge could not relieve it of its character of a
charge on the facts, because in adopting the language of the
Supreme Court, his Honor made it his own language, and
it being for the jury in any event to decide all these ques-
tions, it was error for the Court to express an opinion on
the points covered in this language.

IV. His Honor erred, it is respectfully submitted, in
charging the jury as follows:

"I charge you also, that the law seeks to protect the rail-
road companies from people who try or attempt to beat their
way on the railroad.    Section 678 of the Criminal Code pro-
vides (charging the language of the statute):

"I charge you that the conductors or railroad authori-
ties are peace officers, and have the common law power of
constables."

There was no issue in the case to which this was respon-
sive, and in so charging his Honor could only tend to
impress the jury with the view that it was the duty of the
conductor to carry the passenger and resort to criminal pro-

ceedings in event fare was not paid thereafter, whereas, it is submitted, that a carrier has the right to insist upon prepayment of fare or exhibition of a ticket entitling passenger to transportation.

V. His Honor erred, it is respectfully submitted, in charging the jury as follows:

"Punitive damages may be awarded for any intentional ejectment of a person from a passenger train, no matter how slight the force used, if such ejection was unlawful, and such act is not characterized by inadvertence."

This was a charge on the facts, because it was in effect a statement to the jury as to what facts would constitute wilfulness.

VI. His Honor erred, it is respectfully submitted, in charging the jury as follows:

"I charge you that an unlawful ejection is an invasion of a passenger's rights, and it would be the duty of the jury, if they conclude that she was unlawfully ejected, to write a verdict for punitive damages."

This was a charge on the facts, because it was in effect a statement to the jury as to what facts would constitute wilfulness. It was further erroneous, because it plainly and in terms withdrew from the jury the issue of negligence, and imposed upon the jury the duty of returning a verdict for plaintiff upon the mere finding of an unlawful ejectment.

*Mr. Lucian W. McLemore, for appellant, submits: 1. It is the right and duty of the conductor to demand production of ticket or fare and to eject a passenger upon failure to comply with such reasonable and proper demand, in the absence of a proper explanation, which it is the legal duty of the conductor to accept and act upon. 2. There was no duty on the part of the conductor in this case to accept the explanation of plaintiff, because such duty devolves upon a conductor only when the passenger is wholly without fault and has done all that could reasonably be required of him,*

*and where the railroad company by the mistake, negligence
or other wrong on the part of its agents or servants, has
brought about the passenger's difficulty.    3. There is no
evidence here of any negligence or wilfulness on the part of
any agent or servant of defendant railroad company con-
tributing to or bringing about the loss of plaintiff's ticket.*
And cites: *As to first proposition:* Elliott R. R. (2d. ed.),
sec. 1594; 6 Cyc. 547, 551; Hutch. Car. (3d ed.), sec.
1024, 1036.    *As to second proposition:* 88 S. C. 421; 64
S. C. 514; 42 S. E. 598; 69 S. C. 327; 48 S. E. 252; 87 S. C.
184; 88 S. C. 7; 70 S. E. 311; 64 Mich. 631; 8 Am. St. Rep.
859; 79 Ga. 358; 65 Ark. 177; 67 Am. St. Rep. 913; 103
Tenn. 124; 76 Am. St. Rep. 639; 143 U. S. 60, 73; 85 Tenn.
627; 4 Am. St. Rep. 776; 161 Ind. 153; 100 Am. St. Rep.
261; 70 Fed. 585; 30 L. R. A. 730; 114 Ga. 140; 39 S. E.
894; 55 L. R. A. 536; 35 S. W. 501; 6 Cyc. 556, 557, 588.
*As to third proposition:* 6 Cyc. 61; Hutch. Carriers (3d
ed.), secs. 1131, 1260, 1264, 1265.    *Sleeping car cases:*
89 S. C. 287; 71 S. E. 841; 87 S. C. 361; notes to 21 L. R.
A. 289, and 9 L. R. A. (N. S.) 407; Ann. Cases 1913a,
894; 126 Ga. 609; 55 S. E. 933; 32 S. E. 923; 27 Misc.
508; 58 N. Y. Supp. 300; 202 N. Y. 363; 95 N. E. 808;
Ann. Cas. 1912d, 1150, 1156; 124 N. Y. 23; 143 Mass.
243; 79 Conn. 565; 9 Am. & Eng. Ann. Cas. 199; 7 Hill
(N. Y.) 47; 42 Am. Dec. 36; 149 Ky., 776; 149 S. W.
1002; 41 L. R. A. (N. S.) note; 3 L. R. 6 C. P. 44.    *Prior
sale of ticket did not create through contract:* 21 S. C. 35.
*Exception 1:* Elliott R. R. (2d ed.), secs. 217, 218 & 219.
*Exception 3:* 88 S. C. 421; 91 S. C. 216.    *Exception 5:* 71
S. C. 446; 6 Cyc. 561; 73 S. C. 557; 75 S. C. 355; 86
S. C. 514.    *Charge on facts:* 78 S. C. 103; 69 S. C. 434, 439
and 443.

*Messrs. L. D. Jennings* and *R. D. Epps,* for respondent:
*Exception 1: Res gestae,* 49 S. C..444; 27 S. C. 67; 19 S. C.
373; 79 S. C. 447; 73 S. C. 253.    *Admissions by agent:* 82
S. C. 467.    *Exception 2:* 75 S. C. 125.    *Exception 3:* 88

S. C. 421; 86 S. C. 514; 94 S. C. 95. *Reading opinion:* 86 S. C. 49; 92 S. C. 495. *Exception 4:* 80 S. C. 376; 72 S. C. 162; *Ib.* 355; 71 S. C. 444; 73 S. C. 571; 77 S. C. 399; 76 S. C. 207; 72 S. C. 424; 94 S. C. 224. *Exceptions 5 & 6:* 71 S. C. 444; 88 S. C. 427; 81 S. C. 1; 94 S. C. 95.

July 17, 1914.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Action for tort, in the wrongful ejectment of a negro woman passenger, at Royster, about one mile east of Columbia, and towards Sumter.

The verdict was $200.00 punitive damages. The defendant appeals and assigns six errors. Of these, one is in the admission of testimony, one in refusing to direct verdict, and four in charging the jury.

The undisputed facts are these: The woman had bought in Sumter a return ticket to Greenville, via Columbia and Laurens.

She was on her return to Sumter, and came without incident to Columbia.

At that point there was a change of conductors; and the change took place at Gervais street, towards Greenville from the Union Station. The ticket which she held had been "punched" from Greenville to Columbia.

When the train left Union Station at Columbia, going towards Sumter, and within five minutes, the new conductor proceeded to lift the plaintiff's ticket.

The plaintiff told the conductor, when he reached her, that she had possessed a ticket, but could not then find it. When the train had gone one and one-half miles further, the ticket was found by the porter and another negro, under a seat.

This statement is taken from the defendant's witnesses; it makes a case against the defendant, and the Circuit Court was right to refuse to direct a verdict for the defendant.

It was properly left to the jury to find whether it was the exercise of the highest degree of care to eject a passenger. who claimed to have a ticket, within a mile of the place of departure. The defendant company was guilty of a plain delict, and one which warranted a verdict for punitive damages.

The testimony of the porter only established the testimony above set out, the same practically was testified to by the conductor, and about which there is no dispute. There was, therefore, no error to admit it.

This disposes of the first and second exceptions. They cover the real issue in the case, and that was, did the defendant company act with unreasonable haste in ejecting the passenger.

The other exceptions are to the charge. Let it be reported. It was short, pointed and free from error; and the exceptions to it are without merit.

The judgment below is affirmed.