## 11365

### MATTHEWS v. SOUTHERN RAILWAY COMPANY

#### (120 S. E., 369)

1. CARRIERS—WHETHER PASSENGER WHOSE TICKET WAS ERRONEOUSLY REJECTED ENTITLED TO PUNITIVE DAMAGES HELD FOR JURY.—Where carrier's gateman and station master refused to allow passenger to board a train on which her ticket entitled her to ride until another ticket had been purchased, whether passenger was entitled to punitive damages *held* for the jury.

NOTE: On liability of carrier for punitive damages for refusal to transport passengers, see note in L. R. A. 1915C, 477.

2. CARRIERS—CARRIER'S DUTY TO INSTITUTE REASONABLE INVESTIGA-
TION OF IRREGULAR TICKET.—Where passenger presents an irregular
ticket, it is carrier's duty to heed any reasonable explanation
made by passenger and institute such an investigation as under
the circumstances is reasonably available.

Before N. G. EVANS, SPECIAL JUDGE, Barnwell, December, 1922.   Reversed and remanded.

Action by Betty Matthews against the Southern Railway Company.   From an order directing a verdict for defendant upon the issue of punitive damages, plaintiff appeals.

*Messrs. J. O. Patterson, Jr.* and *James A. Kennedy,* for appellant, cite: *Refusal to accept valid ticket though apparently defective sufficient to warrant punitive damages:* 88 S. C., 7; 88 S. C., 421.  *Failure of conductor or gatekeeper to heed reasonable explanation of passenger subjects company to punitive damages:*  98 S. C., 338; 98 S. C., 346; 64 S. C., 514; 69 S. C., 327.  *Conflict in testimony must be submitted to jury:*  65 S. C., 517.  *Whether mistake was inadvertent or reckless is question for jury:*  91 S. C., 71.  *Failure to carry on punched ticket is wilful disregard of passenger's rights:*  75 S. C., 116; Hutch. Carriers, Section 1066.  *Gross negligence may amount to recklessness or wilfulness:*  65 S. C., 326; 69 S. C., 445.  *Passenger not required to minimize danger of an anticipated wrong:*  98 S. C., 443.

*Messrs. Harley & Blatt,* for respondent, cite:  *Act may be unlawful without being wilful or malicious:*  62 S. C., 269: 2 Rich., 182; 14 Rich., 253; 15 S. C., 412; 29 S. C., 265; 12 A. & E. Enc. L. 2nd Ed., 24; 69 S. C., 444; 2 Hilt., 440; 120 N. C., 320; 90 Tex., 275; 16 L. R. A., 347; 15 Minn., 49; 45 Minn., 53; 105 S. E., 350.

December 8, 1923.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for damages, actual and punitive, on account of the alleged willful and negligent conduct of the defendant in refusing to honor a ticket entitling the plaintiff to transportation as a passenger from Williston to Charleston and return. The appeal is from an order of the presiding Judge, directing a verdict in favor of the defendant upon the issue of punitive damages. The issue of actual damages was then submitted to the jury, which rendered a small verdict in favor of the plaintiff. (The amount is not stated in the record for appeal.)

The evidence on behalf of the plaintiff tends to show the following facts, as to which there appears to be little or no controversy:

On Sunday morning, September 4, 1921, the plaintiff purchased from the defendant's agent at Williston a round-trip excursion ticket to Charleston. The ticket on its face was limited, as to the return passage, to the train that left Charleston at 3 a. m. on Monday, September 5th. On August 31st, after the tickets had been placed on sale, the general passenger agent of the defendant extended the time of the return passage to the train that left Charleston at 3 a. m. on Tuesday, September 6th, on account of the fact that Monday, the 5th, was Labor Day. This extension was also notified by the district passenger agent and published in the News & Courier, a newspaper in Charleston. The agent at Williston received due notice of the extension and so notified the plaintiff both before and at the time the ticket was purchased. On her way to Charleston she was again assured by the conductor who took up the "going" coupon that she had until Tuesday morning to return. On Monday morning she went to the Union Station to take the train leaving Charleston at 8:15 a. m., and presented her ticket to the gateman. He examined it and, discovering that the time limit expressed on its face had expired at 3 a. m., told her that the ticket was not good and that she would not be allowed to board the train with it, handing it back to her. She explained to him what the agent at Williston had told

her when she bought the ticket and what the conductor had told her when he took up the other coupon. There was a crowd pressing into the gate, among them several who had tickets similar to the plaintiff's, and she asked to be allowed inside the railing until the matter could be investigated, to which the gateman consented. The gateman then sent for the station master, who came to the gate and examined the ticket. The plaintiff claims that the ticket was taken out of her hand without her consent. We attach no importance to this, as the plaintiff knew that the station master had been sent for and it was necessary that he have the ticket to understand the controversy. He agreed with the gateman that the time limit had expired and told her that she could not ride upon the ticket and that he would see that she did not get on the train with it. She claimed, as was natural, to have been greatly mortified and embarrassed at the implied charge of trying to ride upon a bad ticket. The station master went off, leaving the ticket with the gateman. He was told before he went, by a bystander, that the advertisement confirming the young lady's statement had appeared in the paper. The station master denied this, but stated on the witness stand that he would have paid no attention to it if he had seen it. "I run that station according to my acceptation of duty." While the station master was away, a friend of the plaintiff bought a straight ticket for her which she exhibited to the gateman and was allowed to board the train. Both the gateman and the station master claimed to have had no notice of the extension. At Pregnalls the conductor received a telegram to refund the price paid by the plaintiff's friend for the straight ticket, which she declined.

Under the cases of *Tolleson v. R. Co.*, 88 S. C., 7; 70 S. E., 311. *Chiles v. R. Co.*, 69 S. C., 327; 48 S. E., 252. *Smith v. R. Co.*, 88 S. C., 421; 70 S. E., 1057; 34 L. R. A. (N. S.), 708. *McKeown v. R. Co.*, 98 S. C., 338; 82 S. E., 437, the question whether or not the admitted breach of

duty was accompanied by circumstances justifying the imposition of punitive damages was one for the jury.

If it be true that the gateman had not received notice of the extension, he was within his duty to hold the passenger until her explanation could be investigated; and so with the station master. But it was clearly their duty not definitely to eject her as a passenger until such an investigation had been made. It is not an admitted fact in the case that they did make this investigation. They so testified, and that as soon as it was discovered that the extension had been authorized, as the plaintiff had told them, they allowed other passengers, similarly situated, to pass, and that the plaintiff would have been allowed to pass also if she had remained to hear the result of the investigation. This, however, was a matter of defense, the truth of which was for the jury; the presiding Judge had no right to consider it upon the motion to exclude punitive damages.

2  It is the duty of the carrier, when an irregular ticket is presented by a passenger, to heed, that is, to listen to, the reasonable explanation made by the passenger, not to accept it unreservedly and instantly, but to heed it and institute an investigation, such as under the circumstances is reasonably available. *McKeown v. R. Co.,* 98 S. C., 338; 82 S. E., 437, where, in addition to this, it is said: "If the conductor * * * willfully, or wantonly refuses to heed them, he subjects his company to punitive damages," if it develops that the passenger was right. *Enlee v. R. Co.,* 110 S. C., 137; 96 S. E., 490.

The negligence of the carrier was conceded. The time limit of the ticket had been extended, of which the agent at the initial point had been duly notified. He, however, was the least important one of all who were expected to handle the transportation to be notified, as his contact with the travelers did not occur where the information was most needed. The gateman, who was the only one except the conductor who came in contact with the returning passenger, was singularly overlooked. As the station master very

truthfully testified:   "Somebody went to sleep on the job."

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.