11842

DEAN v. CHARLESTON & WESTERN CAROLINA RAILWAY
COMPANY *ET AL.*

MAYS v. SAME

(129 S. E., 833)                    ....

1. CARRIERS—PUNITIVE DAMAGES FOR EJECTION OF PASSENGER NOT
RECOVERABLE IN ABSENCE OF WILLFULNESS, RECKLESSNESS, OR WAN-
TONNESS.—Punitive damages for unlawful ejection of passenger are
not recoverable, where conductor acts in good faith and is neither
willful, reckless, nor wanton, particularly where no explanation or
objection is made by passenger.

2. TRIAL—EXCEPTIONS TO COMMENTS OF COURT IN ACTION FOR UNLAW-
FUL EJECTION OF PASSENGER HELD WITHOUT MERIT.—In action
for damages for unlawful ejection ·of passenger, exception com-
plaining of Court's comments on testimony of witness as to time
required for trip, and of Court's insistence that witness had testi-
fied in particular manner, *held* without merit.

Before SEASE, J., Spartanburg, June, 1924. Affirmed
on condition that punitive damages be remitted, otherwise
new trial granted.

Two actions, one by Maria Dean against the Charleston
& Western Carolina Railway Company and the Southern
Railway Company, the other by James Mays against same
defendants, consolidated and tried together. Judgment for
plaintiffs and defendants appeal.

*Messrs. Nicholls & Wyche* and *F. B. Grier,* for appel-
lants, cite: *Simple negligence no ground for punitive dam-
ages:* 126 S. C., 454; 124 S. C., 509; 110 S. C., 137; 99
S. C., 397; 98 S. C., 338; 88 S. C., 241. *Punitive damages
question for jury:* 122 S. E., 856; 122· S. E., 494; 117
S. C., 470.

*Mr. L. G. Southard,* for respondents, cites: *Wrongful
ejectment from train ground for punitive damages:* 99 S.
C., 397; 88 S. C., 421; 88 S. C., 7; 71 S. C., 444. *Puni-
tive damages as vindication of rights; recoverable of right:*
91 S. C., 71; 69 S. C., 160; 69 S. C., 116; 69 S. C., 110;

75 S. C., 299; 65 S. C., 127; 65 S. C., 1; 62 S. C., 330; 60 S. C., 56.  *Duty of conductor to examine ticket:*  83 S. E., 604; 81 S. E., 474; 91 S. C., 477; 88 S. C., 421; 88 S. C., 7; 87 S. C., 184; 69 S. C., 327.  *Comments by Court on facts:* 122 S. E., 856; 109 S. E., 119; 99 S.. C., 221; 87 S. C., 407; 81 S. C., 374; 80 S. C., 383; 73 S. C., 379; 72 S. C., 350; 71 S. C., 136; 61 S. C., 17; 52 S. C., 539; 50 S. C., 293; 49 S. C., 413; 47 S. C., 519; 40 S. C., 40; 36 S. C., 543; 33 S. C., 100; 30 S. C., 350.  *Carrier liable for negligence of agent:*  88 S. C., 421; 20 S. E., 311; 69 S. C., 327.

October 16, 1925.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE J. W. JOHNSON.

These two actions were separately instituted by plaintiffs against defendants to recover actual and punitive damages on account of alleged negligent, willful, and wanton ejectment of plaintiffs from one of defendant's trains.

The cases were tried by consent together before Judge Sease and a jury, at the June, 1924, term of Court, for Spartanburg County, and resulted in a verdict in each case in favor of the plaintiff, for $125 actual damages, and $450 punitive damages.

The facts, out of which these controversies arose, are not in dispute:

The record shows that plaintiff, Maria Dean, in August, 1923, purchased a ticket from the agent of the defendant Southern Railway Company at Asheville, N. C., which entitled her to passage over the Southern and Charleston & Western Railway Companies to her home in Greenwood, S. C.; that on the same day plaintiff, James Mays, purchased a ticket from the agent of Southern Railway Company at Biltmore, N. C., which entitled him to passage over said lines of road to Greenwood, S. C.; that the tickets issued by agents of the Southern Railway Company had attached

thereto two coupons: One entitling the passengers to passage over the Southern Railway from Asheville, in the case of Maria Dean, and from Biltmore in the case of James Mays, to Spartanburg, and the other entitling the passengers to passage from Spartanburg to Greenwood over the Charleston & Western Carolina Railway; that the conductor on the Southern Railway train failed to detach the coupons on the tickets which entitled plaintiffs to passage over the Southern to Spartanburg. The plaintiff left the train of the Southern at Spartanburg, and when the porter called out for passengers to take the train for Greenwood the plaintiffs boarded the train of defendant Charleston & Western Carolina Railway, and when the conductor came to them they handed him their tickets. As to what happened at this time we will quote the testimony to show—Maria Dean—direct examination:

"Q. Now, when he came around to take up tickets, what did you do? A. Handed him my ticket.

"Q. Did you hand him this paper? A. Yes, sir; I handed him that paper.

"Q. What did the conductor do? A. He looked at it and said I was on the wrong train.

"Q. And he told you that you were on the wrong train? A. Yes, sir.

"Q. Where did you tell him you wanted to go? A. I told him I wanted to go to Greenwood.

"Q. How long did he look at it? A. Just a few minutes he looked at it and he said, 'You are on the wrong train.'

"Q. Now—well, when he told you you were on the wrong train, what did he then do? A. He reached up and pulled the cord and put us off, and I felt ashamed."

On cross-examination she was asked:

"Q. He didn't insult you, did he? A. No, sir; he didn't insult me.

"Q. He just told you you were on the wrong train? A. Yes, sir.

"Q. That is all he said, wasn't it?   A. Yes, sir."

James Mays' version of what took place was as follows: Direct examination:

"Q. Which train now did the porter direct you to?   A. The C. & W. C.

"Q. All right, then what happened?   A. Well, I got on the train and boarded the train rather and went on down the road a piece, I estimated about a mile, and the conductor came around and took up the tickets.

"Q. Did you give him this ticket?   A. Yes, sir; I give him this ticket and he looked at it.

"Q. To Greenwood?   A. Yes, sir.

"Q. You were on the C. & W. C. train then?   A. Yes, sir.

"Q. You were on the C. & W. C. train then for Greenwood?   A. Yes, sir.

"Q. You say the conductor looked at the ticket?   A. Yes, sir.

"Q. What did he say?   A. He stood there and looked at the ticket a few minutes, and I can always feel it when it looks like something is going to happen.   By him standing there and looking so long, he stood there and looked at the tickets and finally he reached up and pulls his cord, the train was running on, and he told me, he said: 'You will have to get off, you are on the wrong train, and you go back to Spartanburg and there will be a train out after awhile.'

"Q. Who was he talking to?   A. Talking to me and this lady over there.

"Q. He reached up and pulled his cord, and said you would have to get off?   A. Yes, sir.

"Q. Did you agree with him?   A. No, sir; I didn't say a word; he was a white man—I got off as quick as I could. I estimated it was his train; I knew it was; he was the manager of that train."

The testimony of the conductor was substantially the

same as the testimony of the plaintiffs. He stated in explanation of his conduct that the coupons that should have been detached by the conductor of the Southern Railway train, but which were not detached, misled him, and that he thought that they were tickets which entitled the plaintiffs to passage on the Southern Railway and not over the Charleston & Western Carolina Railway.

The exceptions, six in number, are as follows:

(1) Because it was an error on the part of the Judge to refuse to charge the defendant's request to charge the jury as follows:

"I charge you that if you find that the conductor on the train of the defendant company honestly believed that the plaintiff was on the wrong train, and that he did not act in a willful, reckless, or wanton manner under all of the circumstances, then you could not find punitive damages against the defendant,"

—the error being: (a) If it appeared from all the circumstances that the conductor of the defendant company honestly believed that plaintiff was on the wrong train and did not act in a willful, reckless, or wanton manner, then there could, as a matter of law, be no punitive damages and his Honor should have so instructed the jury. (b) His Honor in effect allowed the jury to give a verdict for punitive damages although the testimony may have shown an honest mistake on the part of the conductor, and that his conduct was neither willful, reckless, nor wanton, and thereby allowed and permitted, and, in effect, instructed the jury that they could give punitive damages for mere negligence or for a mere mistake, on the part of the conductor.

(2) Because it was an error on the part of the Judge to charge the jury as follows:

"I charge you they were ejected and ejectment was an unlawful ejectment, and, as a matter of law, I charge you, that where a passenger is unlawfully ejected, such passenger is not only entitled to recover actual damages, but is entitled

to recover punitive damages or vindictive damages by way of vindicating their rights,"

—the error being that where a passenger is ejected through an honest mistake of the conductor not characterized by gross, careless, willful, reckless or wanton conduct, that the passenger could only recover actual damages and would not be entitled for a mere unlawful ejectment to punitive damages. (b) In order to entitle the passenger to punitive damages for an unlawful ejectment, the circumstances would of necessity have to show conduct amounting to either gross carelessness, recklessness, willfulness, or wantonness, and in the absence of such conduct, punitive damages could not be awarded. (c) His Honor instructed the jury, as a matter of law, that they must give punitive damages in this case, and thereby withdrew from the consideration of the jury any consideration whatever of the defense of the company that the ejectment was due to an honest mistake on the part of the conductor.

(3) His Honor committed error in charging the jury that our Supreme Court in the case of *Williams v. Railway Co.,* 99 S. C., 397; 83 S. E., 604, and *Smith v. Railway Co.,* 88 S. C., 421; 70 S. E., 1057; 34 L. R. A. (N. S.), 708, had decided that an unlawful ejectment carried with it the right to recover punitive damages. It would be respectfully submitted that the two cases referred to are not authority for this decision and do not so decide.

(4) Because it was error on the part of the Judge to make the following comment after the statement by defendant's counsel as to what the witness, W. H. McLarkin, would testify, to wit:

"Court: That is mighty quick speed. That is just a little more than three hours. I have made that trip myself and, every time I made it, it took over four hours,"

—the aforesaid remarks being prejudicial in that it was a comment upon the facts in the case, prohibited by the Constitution, and was, in effect, a statement by the Court that the witness was telling what was untrue.

(5) Because it was an error on the part of the Judge to comment on the testimony of the witness, Maria Dean, as follows:

"Court: She didn't say that.

"Mr. Wyche: I will ask the stenographer to read it.

"Court: He won't go back at all. Proceed. I know she didn't. I sat right by her here an heard every word she said. Proceed,"

—the error being that the witness, Maria Dean, did testify that she had met the witness, James Mays, in Asheville. The Court was mistaken, and the mistake was highly prejudicial to the defendant, it being a comment on the facts and it tended to impress the jury that counsel was trying to be unfair.

(6) Because the remarks of the Judge, throughout the trial of the case, had a tendency to impress upon the jury that the Court was of the opinion that this was an outrageous case, which had a tendency to influence the jury greatly in their verdict.

Appellants' counsel have argued exceptions 1, 2 and 3 together, as they say they involve the consideration of the same proposition, to wit:

"Is a passenger, as a matter of law, entitled to punitive as well as actual damages for an unlawful ejectment through a mistake of the conductor, when no explanation at all is offered by the passenger, and where the conduct of the conductor is neither willful, reckless, nor wanton, but, at most, merely negligent."

The charge here complained of was as follows:

"I charge you they were ejected, and ejectment was an unlawful ejectment, and, as matter of law, I charge you that where a passenger is unlawfully ejected, such passenger is not only entitled to recover actual damages, but is entitled to recover punitive damages, or vindictive damages, by way of vindicating their rights."

So the question presented for the consideration of the

Court is whether or not for every unlawful ejectment of a passenger by a conductor, the passenger is, as matter of law, entitled to punitive damages as well as actual damages.

His Honor quoted from, and apparently based his charge on, the cases of *Williams v. R. R. Co.,* 99 S. C., 397; 83 S. E., 604, and *Smith v. R. R. Co.,* 88 S. C., 421; 70 S. E., 1057; 34 L. R. A. (N. S.), 708.

We do not think these cases authority for the charge of his Honor. Mr. Justice Gage made a brief statement of the facts in the *Williams Case.* He said:·

"The undisputed facts are these: The woman had bought in Sumter a return ticket to Greenville, via Columbia and Laurens. She was on her return to Sumter, and came without incident to Columbia.

"At that point there was a change of conductors; and the change took place at Gervais Street, towards Greenville from the Union Station. The ticket which she held had been 'punched' from Greenville to Columbia.

"When the train left Union Station at Columbia, going towards Sumter, and within five minutes, the new conductor proceeded to lift the plaintiff's ticket.

"The plaintiff told the conductor, when he reached her, that she had possessed a ticket, but could not then find it. When the train had gone one and one-half miles further, the ticket was found by the porter and another negro, under a seat."

The Court held, under this state of facts, that it was properly left to the jury to find whether it was the exercise of the highest degree of care to eject a passenger who claimed to have a ticket, within a mile of the place of departure. The defendant company was guilty of a plain delict and one which warranted a verdict for punitive damages.

The *Smith Case* was an action to recover damages for compelling plaintiff to pay her fare in cash, under threat of expulsion from defendant's train, notwithstanding she pre-

sented to the conductor a ticket which had been sold to her husband for her by one of defendant's ticket agents.

The ticket was purchased under the following circumstances: Plaintiff and her husband desired to go from Edgefield to Augusta; Mr. Smith presented his mileage book to the agent at Edgefield for a ticket for himself and $5 in money with which to buy a ticket for his wife. The agent told him that he could use the mileage book for both himself and wife and proceeded to pull the mileage and gave him two tickets for the coupons detached. The tickets were honored from Edgefield to Trenton, where a change of cars was made and another train was boarded by defendants for Augusta. On this latter train, the conductor called for the mileage book "and after comparing the tickets with it and seeing that both had been issued for coupons from it, he refused to honor them and told Mr. and Mrs. Smith that they would have to pay their fare in cash, or he would put them off the train. Mr. Smith explained to him the circumstances under which the tickets had been issued, and told him that he had offered to pay for his wife's ticket in money, but, at the suggestion of the agent, both tickets had been issued in exchange for coupons from his mileage book. But the conductor refused to accept the explanation, and demanded payment of their fares under threat of expulsion. Thereupon, Mr. Smith, to save his wife from being ejected from the train, got the money from her and paid her fare, but refused to pay his own. After some parleying, the conductor allowed Mr. Smith to ride on his ticket but took up both tickets and the mileage book."

Under the facts of this case, the Court held that the defendant was liable in punitive damages for the conduct of its agent.

We find nothing in either of these cases to sustain his Honor's charge that punitive damages, as matter of law, are recoverable for every unlawful ejectment of a passenger. In both of these cases there was a conscious failure on the

part of the conductors to exercise the highest degree of care or even due care. They refused to heed reasonable explanations offered by plaintiffs. They made no effort to verify the statements made by the passengers. - In other words their conduct was consciously oppressive, and they thereby rendered the carriers liable for punitive damages.

In the case under consideration, the undisputed testimony shows that the conductor was misled by the failure of the conductor on the train from Asheville to Spartanburg to lift the coupon used on that train, and that he simply informed the plaintiffs that they were on the wrong train, and that they would have to get off and take another train. The plaintiffs promptly complied without offering a word of protest or explanation.

The testimony further shows that when the conductor was apprised of his mistake by telegram that he wired the agent at Spartanburg to purchase tickets for the plaintiffs over another line, and that the plaintiffs refused to receive these tickets.

We do not find that our Courts have ever held that a party could recover punitive damages in a case where the facts were similar to the facts in this case. They have held in numerous cases that a party may be guilty of such gross negligence that his conduct indicates a wanton disregard of the rights of others, and in such a case punitive damages may be awarded.

In the case of *Horton v. Pullman Co.*, 114 S. C., 59; 96 S. E., 289, the facts were these:

"Plaintiff brought this action to recover actual and punitive damages. She testified that in September, 1916, she was a passenger on one of defendant's cars from Charlotte, N. C., to New York City; that, although the conductor and porter who had charge of the car knew her destination, they put her off at Newark, N. J., a station about six miles from New York, telling her that she had arrived at her destination; that she did not discover the mistake until after the

train was moving off from the station, when she called to the Pullman conductor, who was standing on the end of a car, and told him that she had been put off at the wrong station, and he called back to her to take the next train into New York, which she did, arriving there about 30 minutes later; but she says the later train had no Pullman accommodations, and the cars were crowded with negroes and drunken men, and she was unable to get a seat, and had to stand up—at least part of the time."

The jury rendered a verdict in favor of plaintiff for both actual and punitive damages.

The Circuit Judge passed an order granting a new trial, unless the verdict for punitive damages should be remitted.

Mr. Justice Hydrick, in delivering the opinion of the Court says:

"We do not hesitate to say that the evidence was not sufficient to sustain the verdict for punitive damages under the law as applied in this State, because it does not warrant any reasonable inference of an intentional or willful dereliction of duty on the part of either the conductor or porter."

While it is true that the decision of this case went off on another point, yet, I think the language used by Mr. Justice Hydrick clearly states the law applicable to cases like the one we are considering.

Exceptions 1, 2 and 3 are sustained. The other exceptions are without merit and are overruled.

It is the judgment of this Court that a new trial be granted, unless plaintiff shall, within 10 days after the remittitur is sent down, remit on the record the judgments for punitive damages. That upon this being done, the judgments below be affirmed.

Mr. Chief Justice Gary and Messrs. Justices Watts and Marion concur. Mr. Justice Cothran did not participate.